IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | | |
|---|---|---|
| **HEATHER U.** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. CBD-19-392 |
| | ) | |
| **ANDREW SAUL,**[1] | ) | |
| | ) | |
| **Commissioner,** | ) | |
| **Social Security Administration** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

Heather U. ("Plaintiff") brought this action under 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner"). The Administrative Law Judge ("ALJ") denied Plaintiff's claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("SSA"). The ALJ also denied Plaintiff's claim for a period of Supplemental Security Income ("SSI") under Title XVI of the SSA. Before the Court are Plaintiff's Motion for Summary Judgment ("Plaintiff's Motion"), ECF No. 13, Plaintiff's Alternative Motion for Remand ("Alternative Motion"), ECF No. 13, and Defendant's Motion for Summary Judgment ("Commissioner's Motion"), ECF No. 15. The Court has reviewed the motions, related memoranda, and the applicable law. No hearing is deemed necessary. *See* Loc. R. 105.6 (D. Md.). For the reasons

---

[1] When this proceeding began, Nancy Berryhill was the Acting Commissioner of the Social Security Administration. On June 17, 2019, Andrew Saul was sworn in as Commissioner and is therefore, automatically substituted as a party. *See* Fed. R. Civ. P. 25(d); *see also* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

1

presented below, the Court hereby **DENIES** Plaintiff's Motion, **DENIES** Commissioner's Motion, and **GRANTS** Plaintiff's Alternative Motion, and **REMANDS** the ALJ's decision pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion. A separate order will issue.

I. **Procedural Background**

On March 9, 2016, Plaintiff filed for DIB and SSI under Titles II and XVI of the SSA, alleging disability beginning January 1, 2006. R. 21. Plaintiff alleged disability due to multiple impairments, including: depression, anxiety, chronic migraines, a herniated disc, arthritis, high blood pressure, vertigo, and panic attacks. Pl.'s Mem. in Supp. of Pl.'s Mot. 1–2, ECF No. 13–1. Plaintiff's claims were initially denied on May 12, 2016 and upon reconsideration on September 29, 2016. R. 21. An administrative hearing was held on October 6, 2017. R. 21. On February 7, 2018, Plaintiff's claims for DIB and SSI were denied. R. 35. Plaintiff sought review by the Appeals Council, which concluded on December 10, 2018, that there was no basis for granting the request for review. R. 1. Plaintiff subsequently filed an appeal with this Court. ECF No. 1.

II. **Standard of Review**

On appeal, the Court has the power to affirm, modify, or reverse the decision of the ALJ "with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (2019). The Court must affirm the ALJ's decision if it is supported by substantial evidence and the ALJ applied the correct law. *Id.* ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."); *see also Russell v. Comm'r of Soc. Sec.*, 440 F. App'x 163, 164 (4th Cir. 2011) (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)). "In other words, if the ALJ has done his or her job correctly and supported the decision reached with substantial evidence, this Court cannot

overturn the decision, even if it would have reached a contrary result on the same evidence." *Schoofield v. Barnhart*, 220 F. Supp. 2d 512, 515 (D. Md. 2002). Substantial evidence is "more than a mere scintilla." *Russell*, 440 F. App'x at 164. "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see also Hays*, 907 F.2d at 1456 (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)) (internal quotation marks omitted) ("It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence.").

The Court does not review the evidence presented below *de novo*, nor does the Court "determine the weight of the evidence" or "substitute its judgment for that of the Secretary if his decision is supported by substantial evidence." *Hays*, 907 F.2d at 1456 (citations omitted); *see also Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972) ("[T]he language of § [405(g)] precludes a *de novo* judicial proceeding and requires that the court uphold the Secretary's decision even should the court disagree with such decision as long as it is supported by 'substantial evidence.'"). The ALJ, not the Court, has the responsibility to make findings of fact and resolve evidentiary conflicts. *Hays*, 907 F.2d at 1456 (citations omitted). If the ALJ's factual finding, however, "was reached by means of an improper standard or misapplication of the law," then that finding is not binding on the Court. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987) (citations omitted).

The Commissioner shall find a person legally disabled under Titles II and XVI if he is unable "to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a) (2012). The Code of Federal Regulations outlines a five-step process that the Commissioner must follow to determine if a claimant meets this definition:

1) Determine whether the plaintiff is "doing substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i) (2012). If he is doing such activity, he is not disabled. If he is not doing such activity, proceed to step two.

2) Determine whether the plaintiff has a "severe medically determinable physical or mental impairment that meets the duration requirement in § [404.1509], or a combination of impairments that is severe and meets the duration requirement." 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii) (2012). If he does not have such impairment or combination of impairments, he is not disabled. If he does meet these requirements, proceed to step three.

3) Determine whether the plaintiff has an impairment that "meets or equals one of [the C.F.R.'s] listings in appendix 1 of this subpart and meets the duration requirement." 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii) (2012). If he does have such impairment, he is disabled. If he does not, proceed to step four.

4) Determine whether the plaintiff retains the "residual functional capacity" ("RFC") to perform "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv) (2012). If he can perform such work, he is not disabled. If he cannot, proceed to step five.

5) Determine whether the plaintiff can perform other work, considering his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v) (2012). If he can perform other work, he is not disabled. If he cannot, he is disabled.

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2012). Plaintiff has the burden to prove that she is disabled at steps one through four, and Commissioner has the burden to prove that Plaintiff is not disabled at step five. *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992).

### III. Analysis

The ALJ evaluated Plaintiff's claim using the five-step sequential evaluation process. R. 23–35. At step one, the ALJ determined that "[Plaintiff] engaged in substantial gainful activity during the following periods: April 1, 2016 through June 30, 2016." R. 23. At step two, under

20 C.F.R. §§ 404.1520(c) and 416.920(c), the ALJ determined that "[Plaintiff] had the following severe impairments: affective disorder, anxiety disorder, coronary artery disease, carpal tunnel syndrome affecting the left upper extremity, degenerative disc disease of the lumbar spine, diabetes mellitus, type II, obesity, osteoarthritis of the bilateral knees, and radial styloid tenosynovitis of the right upper extremity." R. 24. At step three, the ALJ determined Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)." R. 25. The ALJ found that Plaintiff has moderate limitations in concentrating, persisting, or maintaining pace. R. 26. Before turning to step four, the ALJ determined that Plaintiff had the RFC to perform sedentary work. The ALJ limited Plaintiff to the following limitations:

> [Plaintiff] could lift, carry, push and pull up to ten pounds occasionally and less than ten pounds frequently. She could sit for six hours in an eight-hour workday, and stand and walk for two hours in an eight-hour workday. [Plaintiff] could only sit for two hours at a time, after which she will need a break, which could be accommodated through normal work breaks. She could occasionally climb ramps/stairs; balance; stoop kneel; crouch; and crawl. [Plaintiff] could never climb ladders, ropes, and scaffolds. She could perform simple, routine tasks, not at a production pace. [Plaintiff] could frequently handle, finger, and feel with the bilateral upper extremities. She would be off task for ten percent of an eight-hour workday.

R. 27. At step four, the ALJ determined Plaintiff is unable to perform any past relevant work. R. 33. At step five, with the benefit of a Vocational Expert, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including: document preparer, addresser, and order clerk. R. 34. The ALJ found that "Plaintiff has not been under a disability, as defined in the Social Security Act, from November 16, 2015, through the date of this decision." R. 35.

5

On appeal, Plaintiff argues that the Court should reverse the final decision of the ALJ, or in the alternative, remand the case to the SSA for further proceedings, alleging that: (1) the ALJ erroneously assessed Plaintiff's RFC; and, (2) the ALJ erroneously evaluated Plaintiff's subjective complaints. Pl.'s Mem. in Supp. of Pl.'s Mot. 3–13.

The Court agrees with Plaintiff, and remands the case for the reasons stated below.

**The ALJ's analysis of Plaintiff's RFC is flawed because the ALJ: (1) failed to explain why Plaintiff would be off task for ten percent of an eight-hour workday; and (2) failed to provide an explanation of what he meant by the term "not at a production rate pace."**

Plaintiff avers that the ALJ erroneously assessed Plaintiff's RFC because he: (1) "failed to set forth a narrative discussion setting forth how the evidence supported each conclusion, citing medical facts and nonmedical evidence;" (2) "failed to provide any explanation of the evidence upon which he relied to determine that a limitation to 'simple, routine tasks, not at a production rate pace' adequately addressed [Plaintiff's] deficiencies in concentration, persistence, or pace;" (3) "failed to provide any explanation of what he meant by the term 'not at a production rate pace;'" and (4) "failed to set forth any explanation as to how he determined that an individual with moderate limitations in concentration, persistence, or pace would be capable of maintaining, concentration, attention, and pace for 90 percent of the workday." Pl.'s Mem. in Supp. of Pl.'s Mot. 3–13.

The RFC is an assessment that represents the most a claimant can still do despite any physical and mental limitations on a "regular and continuing basis." 20 C.F.R. §§ 404.1545(b)-(c), 416.945(b)–(c) (2012). In making this assessment, the ALJ "must consider all of the claimant's 'physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect [the claimant's] ability to work.'" *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (citing *Monroe v. Colvin*, 826 F.3d 176, 188 (4th

Cir. 2016)); *See also* 20 C.F.R. §§ 404.1545(a), 416.945(a) (2012). The ALJ must present a "narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence (e.g. daily activities, observations)," and must then "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *See Thomas*, 916 F.3d at 311; SSR 96-8p, 1996 WL 374184 at *7 (S.S.A. July 2, 1996). "Once the ALJ has completed the function-by-function analysis, the ALJ can make a finding as to the claimant's RFC." *Thomas*, 916 F.3d at 311. "[A] proper RFC analysis has three components: (1) evidence, (2) logical explanation, and (3) conclusion. The second component, the ALJ's logical explanation, is just as important as the other two." *Id.* "Ultimately, it is the duty of the [ALJ] reviewing the case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts of evidence." *Hays*, 907 F.2d at 1456 (citing *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)). "[R]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (citing *Cichocki v. Astrue*, 729 F.3d 172, 177 (2nd Cir. 2013)).

After determining Plaintiff's RFC, the ALJ tracks the longitudinal course of treatment for Plaintiff's mental and physical impairments. The ALJ begins by reviewing Plaintiff's allegations of impairments. R. 27–28. The ALJ noted Plaintiff's alleged impairment with: concentration due to her post-partum depression; pain in her knees and various joints; pain resulting in difficulty walking, standing and lifting her youngest daughter; and difficulty using her hands and sitting. R. 28. According to the ALJ, after considering the medical evidence, he believed that Plaintiff's medically determinable impairments could reasonably be expected to cause the

7

alleged symptoms, but believes Plaintiff's statements concerning the intensity, persistence, and limiting effects of the alleged symptoms are not consistent the medical evidence.  R. 28.

The ALJ begins with Plaintiff's psychiatric symptoms.  R. 28.  Despite the ALJ noting Plaintiff's complaint of severe depression and anxiety, he determined that Plaintiff still retains the ability to engage in a range of activities at the less than sedentary level of exertion.  R. 29.  To support this contention, the ALJ cites to records indicating that Plaintiff: displayed no psychotic symptoms such as hallucinations; did not require hospitalizations due to suicidal ideation or gesture; had intact memory, thought process, fair to good insight and judgment; and generally showed normal psychiatric findings.  R. 29.

Next, the ALJ addressed Plaintiff's alleged cardiovascular impairments.  R. 29.  The ALJ determined that Plaintiff's cardiovascular abnormalities were severe, however "it does not result in additional restrictions in Plaintiff's exertional and/or non-exertional functioning."  R. 29.  To support his conclusion, the ALJ cited to records showing that: Plaintiff's stress test showed no signs of ischemia; Plaintiff experienced no significant cardiovascular symptoms with stress or recovery; and Plaintiff had normal cardiovascular functioning.  R. 29.  The ALJ also noted that Plaintiff's treatment was generally conservative.  R. 29.  The ALJ acknowledged an abnormal electrocardiogram, but also noted Plaintiff's normal cardiac testing.  R. 29.  Further, the ALJ observed that Plaintiff had "mild obstructive coronary artery disease with reversible myocardial ischemia in the PET examination."  R. 29.  Lastly, the ALJ noted that Plaintiff's recommended treatments for cardiovascular abnormalities indicate that the physicians "encourage activity, rather than discourage it due to her cardiovascular conditions."  R. 29.

The ALJ also discusses Plaintiff's medical records pertaining Plaintiff's diabetes.  R. 30.  The ALJ considered physician notes and determined that "the evidence supports that the diabetes

8

mellitus may affect [Plaintiff's] exertional and nonexertional functioning, however [Plaintiff] remains capable of engaging in a reduced range of sedentary exertional activity, with postural, environmental, manipulative, and mental limitations." R. 30. To support this determination, the ALJ cites to the fact Plaintiff never suffered from episodes of ketoacidosis due to her uncontrolled diabetes mellitus, nor had Plaintiff experienced diabetic retinopathy or diabetic neuropathy. R. 30.

The ALJ then discusses Plaintiff's musculoskeletal complaints. R. 30. The ALJ determined that Plaintiff's combination of obesity, joint abnormality, and spine abnormality warranted restrictions consistent with a reduced range of sedentary work, however he believes Plaintiff is not precluded from performing all work in the national economy. R. 30. Among many citations to the record, the ALJ cites to Plaintiff's primary care records which show that Plaintiff "frequently denies gait abnormality, loss of strength, tingling, and numbness." R. 30.

Further, the ALJ reviewed records of Plaintiff's orthopedic consultative examination which "showed no tenderness along the neck, tenderness along the spinous process of the lumbar spine and up into the right upper paraspinal musculature." R. 30. However, the ALJ also acknowledged contradicting evidence which show "diagnosis of radiculopathy and low back pain, as well as complaints of right knee pain and right wrist pain," but then cited additional treatment notes which "show she reported no arthralgia, muscle weakness, back pain, or swelling in the extremities." R. 30–31. The ALJ also points to records showing that Plaintiff received treatment for her back and knee conditions. R. 31. However, the ALJ determined Plaintiff's treatment was "relatively conservative" with physical therapy for Plaintiff's knee condition and injection therapy for Plaintiff's back complaint. R. 31. The ALJ also referenced Plaintiff's treatment notes from the Mid-Maryland Musculoskelatal Institute which showed that Plaintiff

9

"underwent an electromyelogram/nerve conduction study after complaints of impingement, numbness, and tingling." R. 31. The ALJ commented that

> [Plaintiff's] examination showed decreased median nerve distribution and tactile distal extremities, positive Tinel's of the left arm at the median nerve, positive Phalen's test, and carpal compression tests. Her electro-diagnostic testing dated May 12, 2016, showed decreased sensation in the third digit of the left hand, compared to the right hand.

R. 31. Contrary to this evidence, the ALJ identified records which showed Plaintiff had: 5/5 grip strength; imaging studies that showed a mild levoscoliosis, degenerative disc disease, with no instability during flexion and extension; very minimal degenerative joint disease of the right knee, and that the examining physician recommended that Plaintiff use a carpal tunnel stint to reduce symptoms. R. 31.

After reviewing the medical records, the ALJ concluded:

> In summary, despite the limitations caused by [Plaintiff's] medically determinable severe impairments, she retains the capacity to perform exertional and nonexertional activities as detailed in the residual functional capacity statement in this decision. The undersigned thoroughly considered [Plaintiff's] testimony regarding the effects of her various conditions and the tumultuous nature of her home life; however, the evidence supports that she remains capable of performing a reduced range of sedentary exertional activity.

R. 31–32.

The Court finds that the ALJ thoroughly reviewed the medical records and even addressed the contradicting evidence as required by *Mascio*. 780 F.3d 632, 636 (4th Cir. 2015) (citing *Cichocki v. Astrue*, 729 F.3d 172, 177 (2nd Cir. 2013)) ("[R]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate

meaningful review."). On more than one occasion, the ALJ identified evidence which highlights Plaintiff's impairments, but then cited other evidence which showed the impairments are not as severe as Plaintiff complained. However, the Court finds that the ALJ erred by failing to explain how "[Plaintiff] would be off task for ten percent of an eight-hour workday." R. 27. The ALJ cited to records which indicate Plaintiff has difficulty concentrating due to her psychiatric conditions, R. 26, and to her post-partum depression, R. 27–28. The ALJ also cited to records which support a minimization of the severity of the impairments such as: Plaintiff's overall good mental status, R. 28–29; Plaintiff's intact memory, thought processes, fair to good insight and judgment, and focused attention and concentration, R. 29; and Plaintiff's normal psychiatric findings in Plaintiff's primary care records, R. 29. However, at no point does the ALJ discuss why "Plaintiff would be off task 10 percent of an eight-hour workday." R. 27. How did the ALJ determine that Plaintiff would be off task for 10 percent and not 20 percent? *See Kimberly B. v. Commissioner*, No. 1:17-cv-2913-GLS, 2019 WL 1040869, at *3 (D. Md. Mar. 4, 2019) (holding that the ALJ failed to adequately explain which evidence the ALJ weighed and how because the ALJ did not specify how Plaintiff could sustain and attend to tasks during an 8-hour period). This is especially important because the ALJ found that Plaintiff has moderate limitations in concentration, persistence, and pace.

Although the ALJ reviewed the medical record thoroughly, he failed to provide the logical explanation required to bridge the gap between the evidence and the conclusion. *See Thomas*, 916 F.3d at 311 ("[M]eaningful review is frustrated when an ALJ goes straight from listing evidence to stating a conclusion"). A discussion of how the ALJ determined the amount of time Plaintiff would be off task, would have sufficed.

Further, the ALJ failed to provide any explanation of what he meant by the term "not at a production rate pace." R. 27. *Thomas* held that four errors when *combined* frustrated the ability to conduct meaningful appellate review, *Thomas*, 916 F.3d at 312. The Court in *Thomas* stated that the fourth error committed by the ALJ was because the ALJ "stated that Thomas could not perform work requiring a production rate or demand pace [however] she did not give us enough information to understand what those terms mean." *Id.* at 312; *See also Perry v. Berryhill*, 765 F. App'x 869, 872–73 (4th Cir. 2019) (holding that the ALJ's RFC was not supported by substantial evidence because the ALJ failed to explain what "non-production oriented work setting" meant); *Kimberly B.*, 2019 WL 1040869 at *3 (holding that because the ALJ did not explain what "no production rate or pace work" meant, remand was appropriate).

Here, the ALJ did not explain what "simple routine tasks, not at a production pace" meant. R. 27. Without a definition, the Court cannot reconcile whether the RFC finding properly accounts for Plaintiff's moderate limitations in concentrating, persisting, or maintaining pace. *Thomas*, 916 F. 3d at 312, n.5 ("Without further explanation, we simply cannot tell whether the RFC finding – particularly the portion restricting Thomas to jobs that do not require a 'production rate' or 'demand pace' – properly accounts for Thomas's moderate limitations in concentration, persistence, and pace."). Defendant is correct in that *Thomas* held that the failure to define "production pace" was but one of four errors the ALJ committed, *Id.* at 313, however, nothing in *Thomas* requires a court to find that all four errors in *Thomas* must be present in every case in order to remand based on one error. In other words, *Thomas* did not set forth a test which requires all four errors to be present. The Court in *Thomas*, similar to this Court, analyzed the errors in its totality and remanded the case.

Although, it is not the Court's role to re-weigh the evidence nor to act as a fact-finder, *Hays*, 907 F.2d at 1456 (citations omitted); *see also Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972), the ALJ's analysis must provide a logical explanation to allow for meaningful review. *Thomas*, 916 F.3d at 311–312. Due to the ALJ's failure to fill the void between the evidence and his conclusions, the Court cannot conduct meaningful review.

Plaintiff also raises issue with the ALJ's evaluation of Plaintiff's subjective complaints. Pl.'s Mem. in Supp. of Pl.'s Mot. 13. However, in view of the Court's decision to remand the matter due to the ALJ's inadequate RFC analysis, the Court declines to address the remaining issue. *See Brown v. Colvin*, 639 F. App'x 921, 923 (4th Cir. 2016) (declining to address all of a claimant's issues raised once the court decided to remand on one issue); *Edna Faye H. v. Saul*, No. TMD-18-581, 2019 WL 4643797, at *6 (D. Md. Sept. 24, 2019). On remand, the ALJ should address the ALJ's evaluation of Plaintiff's subjective complaint. *Timothy H. v. Saul*, No. TMD 18-1675, 2019 WL 4277155, at *7 (D. Md. Sept. 10, 2019). In remanding this case, the Court expresses no opinion as to whether the ALJ's ultimate decision that Plaintiff was not disabled is correct or incorrect. *See Parker v. Comm'r, Soc. Sec.*, No. ELH-16-2607, 2017 WL 679211, at *4 (D. Md. Feb. 21, 2017).

### III. Conclusion

Based on the foregoing, the Court hereby **DENIES** Plaintiff's Motion, **DENIES** Commissioner's Motion, **GRANTS** Plaintiff's Alternative Motion and **REMANDS** this matter for further proceedings.


April 9, 2020                                                                 /s/
                                                                        Charles B. Day
                                                                        United States Magistrate Judge

CBD/hjd